I'm Steve Curry. I'm here on behalf of the appellate, Gerald Moses, in this case. As the court's aware from the briefing of the parties, this is a case that was dismissed by the district court on summary judgment. It involves a Americans with Disabilities Act claim. It involves a ADEA age claim and also a claim under the Arkansas Civil Rights Act. I will address in the time allowed what I consider to be the relevant issues for the court's consideration. As you are aware, this is here on de novo review because it is involving a summary judgment issue. The district court in this case first discusses at length what it I feel, as I've argued in the brief, that the error in this evaluation is that the court misconstrued the holding in the Morgan case cited in the brief as well as in the Betts case issued by this court. In both of those cases, the court distinguished between discrete acts of discrimination, which would trigger a charge of discrimination, versus a hostile work environment claim, which the court says is continuing in nature. It's our position in this case that the complained of activities are evidence of a hostile work environment claim, and it's a continuing violation argument. That is consistent with the EEOC charge itself, which has continuing violation checked. It's also consistent with the evidence presented during the summary judgment proceedings. Mr. Moses was 58 years old. He was the oldest employee at had an actual disability known to the Falcon Jet and Human Resource Department, to the nurse there. He was required to report to these individuals because of his disability, because of the medications that he took. And what is interesting in this case, and the district court didn't really address this, is the record shows that for Mr. Moses' evaluations, if you look at them in the record beginning in 2008, he was getting exceptional evaluations for his work as an air maintenance employee. His supervisors were saying he exceeded expectations, that he got positive reviews, that he was a valuable asset to the company, that he meets expectations. During this time, he was having back issues. He was required to take FMLA leave to get the back issues addressed. He came back to work. He received positive evaluations after that, but he was asking for accommodations. And as the court is aware, the employee has to make a request for a reasonable accommodation to trigger the to evaluate the situation, engage in a meaningful conversation, and to craft an accommodation that would address a disability. The undisputed evidence in this case, through Mr. Moses, is that he had gone to his supervisors. He had reported to HR. He had told them that I'm being he asked to be removed out from under their supervision and transferred to a work assignment that would be outside of those supervisors' control. After that, the SALT Falcon Jet was able to make that accommodation. They made the transfer. Again, his work performance was receiving positive comments, but for some reason, that is not articulated by Falcon Jet. They reversed that position, and they took Mr. Moses and put him back into the environment that was causing him difficulty, into the stressful environment with his supervisor. It's when he was placed back under this supervision that his job performance became an issue. His stress level became an issue. His blood pressure increased. He was having trouble in performing his job. Should it matter to us that, you know, if you look at it, we have Mr. Moses's reports, but there doesn't seem to be medical evidence that addresses that his blood pressure spiked and that the numbers were what he says. Does that matter at all? Does it matter that he was experiencing? Well, does it matter that the only evidence we have for it is his statements without any medical record evidence? Well, I think if you look at the report of Dr. Carley, which was what they call their IME report, even he corroborates many of the complaints that Mr. Moses is stating, the blood pressure issues, the medication issues, things of that nature. But no, in response to your- He corroborates that there are blood pressure issues, but there's nothing about blood pressure no evidence from his physicians that this was a problem, no letter from his physician requesting some accommodation. No, it would be solely upon the testimony of Mr. Moses, which I think would be credible under the circumstances because it's corroborated both by Dr. Carley and if you look in the evaluation that was due September the 31st of 2012, but was actually signed by the supervisors October the 12th of 2012. I think it's in the record at 219 through 226. There's a comment made by the evaluators who happened to be those people that were harassing Mr. Moses, that he was unable to get along with the supervisors. So if you look at outside corroboration of the testimony of Mr. Moses, yes, I think it is there, but there's no doctor's report in there that supports the request for accommodation. And I would submit that none is needed because the employer recognized what was being requested of them and accommodated him by doing exactly what he asked for, by moving him out from under those supervisors. Now, if the case is viewed, which I contend it is, as a continuing violation case. Well, the hostile environment obviously is under current president, but he got an EEOC right to sue letter before he was terminated, correct? He received his right to sue letter, your honor, was, yes, it was. The right to sue was issued in May of 2014. His termination letter was June the 18th of that same year. Once he was terminated, didn't he, shouldn't he have brought an additional administrative claim for the unlawful termination? Looking in hindsight, yes, but the thing is that, and what the district court did not address is under the Arkansas Discrimination Act, he is still covered under the one year statute under the Arkansas Act. So he's got one year from the time of the termination in which to file his complaint, which he did. And the district court does not really address the Arkansas aspect of the case, which I think is certainly subject to this court's consideration, because even if the termination had expired under federal law, under state law, he's still preserved under both the 90 days after the issuance of the right to sue letter, as well as then under the one year statute under the Arkansas Act. I wanted to talk or address the issue of the IME report and the, in this case, the employee has requested accommodation. He was extended accommodation, then he goes back again after he has been reassigned and he requests the same accommodation. At this point in time, his employer rejects that request and it took them some time, we have the evaluation, and then there's an IME meeting that is set up on September the 12th of 2013 with Dr. Carley. Again, we don't have any testimony from Dr. Carley as to what actually happened. So where the facts, the undisputed facts come from Mr. Moses. He claims that the meeting actually lasted three minutes. During that time, he wanted to tell Dr. Carley about the harassment and the treatment being afforded to him by his supervisors. Dr. Carley said, I don't want to talk to you about that. I don't want to hear it. It was not put in the report. There's no mention in Dr. Carley's IME report, anything about the harassment. So therefore, if he doesn't deal with the harassment issue, when he makes a recommendation that there's no way to accommodate this request, he's not considered what the real issue is. He's not addressed the disability that is presented by Mr. Moses. And because of that, I think that IME is not evidence of an attempt to reach some type of reasonable accommodation with the employee because if it was, he certainly would have allowed him to expound upon what type harassment he was being subjected to. That's consistent, too, if you look in the record, Mr. Moses says that at his employee reviews, he wanted to add to that on the employee comment section. This is the harassment I'm being subjected to. The supervisor told him you're not going to do that. He wrote it out anyway, and the supervisor threw it away. That's undisputed. And so it's almost as if, okay, we know you are disabled, but we're not going to do anything about it. We're not going to let you talk about it, and we're not going to recognize it. Is there any significance to the fact that while your client did describe the harassment and did make these attempts to include it in the record, and he was apparently deprived of that opportunity, is it significant at all that when he was asked about the harassment, his understanding that the purpose of the harassment was because they were fearful he was going to take his job rather than ever stating that he thought he was being discriminated against as a result of either his age or his status of disability? He does say that, Your Honor, but he also describes a situation where his supervisors knew about his condition, and, for example, the one where Mr. Srum, when he walks in in the morning, starts out badgering him, hollering at him, making him excessively nervous, the sabotage of the work, the taking of the tools, the various things like that. Mr. Moses is of the opinion that was because of his disability, but there's also testimony in there that he thought they were also concerned that he might take their job. So it's kind of a mixed situation, but the record does reflect that. I've got five minutes reserved, which I've gone way into, so I've got about two minutes if I could sit down and come back and address the court in just a moment. Thank you, Mr. Curry. Mr. Vandiver? May it please the court. My name is Brian Vandiver. I'm here on behalf of Mr. Moses' former employer, Dasso Falcon Jet. This court should affirm the district court. Judge Moody got it right on all counts, and we respectfully ask that this court do that. I'll first address the termination claims, the harassment claims, the failure to accommodate claims, and then the retaliation claims, in that order. But first, a few facts. Dasso Falcon Jet builds private jets and sells them to corporate buyers and private buyers around the world. It has a completion center in Little Rock, Arkansas, where it employs about 1,800 employees. Mr. Moses was a flight avionics checkout employee, which meant that he had a safety-sensitive job. His job was to check out the avionics and electrical equipment of the jet before the jet was delivered to the customer. And that job included flying with the pilot on test flights. The termination claims Judge Moody correctly concluded are barred, and it's not that the EOC charge was untimely or that it should have been amended. As Judge Smith correctly pointed out, there should have been a second EEOC charge after the termination. The right-to-sue letter was issued on May 30, 2014. He was terminated on June 18, 2014, and there was never a second EEOC charge. We contend all of the federal claims based upon the termination are thus barred and correctly not allowed to proceed. I believe what Mr. Moses is trying to do, I think he's misplaced and relying on a continuing violation theory. I think Morgan is clear that termination is a discreet act that requires a new EEOC charge. I think what he's trying to do is resurrect an old line of case law that says that termination claims that are like or reasonably related to a previous EEOC charge can proceed and do not require a new EEOC charge. Again, that case law is no longer good law after Morgan, as the Richter case holds. As to the state law claim under the ACRA statute, the ACRA, Arkansas Civil Rights Act claim does not allow age claims, does not allow perceived disability claims, so Mr. Moses clings to his actual disability discrimination at the termination. We would contend that while the district court did not directly address that, it did conclude that Mr. Moses was not qualified to do the job because of the IME, and because he was not qualified, he could not sue for disability discrimination at the termination. The harassment claims are also, were properly dismissed. There was no evidence that age or disability was a reason for the alleged harassment, as Judge Erickson pointed out. My deposition questions directly to Mr. Moses, ask him, was it your disability? And he said, no, I think it was because they were trying to take my job, or they were afraid I would take their job. And that admission is clear, that Mr. Moses didn't think it was his disability that he was being harassed for, being picked on for. But even if there was evidence that disability or age was a reason, the conduct alleged is not severe and pervasive. This court has set that bar, the very high bar, to prove what is severe and pervasive. And here we have allegations that someone accused him of being drunk at work. Someone may have stolen his tools. Someone may have sabotaged his work once, on one occasion. Let's accept all of that as true as we must on the summary judgment record. It's not severe and pervasive. The law requires much more than that. Title VII and the statutes we are here under, the ADA and the ADEA, they're not a civility code, a civility code to regulate workplace conduct. And the first occasion that he complained of harassment was January 2013. Mr. Moses had been employed there since 97, had been in this job since 07. But transitioning to the failure to accommodate claim, when he did complain of harassment, and this was after his first incidence of poor performance in early 2013, Falcon Jet addressed it. And in April of 2013, Falcon Jet gave him the accommodation he requested, as counsel indicated. Now, the law does not require a company to give an employee the exact accommodation he requests. And the law in this circuit and the EEOC clearly states that reassignment is an accommodation of last resort. But Falcon did that out of the gate. Falcon Jet said, okay, if you're having problems with these supervisors, let's transition you to another supervisor and see if that works. And so in April 2013, he was transitioned to Leah Bynum, a male, who had previously supervised Mr. Moses in 2010 and 2011. And when he supervised Mr. Moses in 2010 and 2011, Mr. Bynum gave Mr. Moses good reviews, satisfactory reviews. But in July of 2013, Mr. Bynum then completes the performance evaluation and it needs improvement. Consistent with the poor performance evaluations from Mr. Shrum earlier in the year. And Mr. Moses admits in his deposition testimony that he has no allegations, no problems with Mr. Bynum. Never complained that there was harassment under his watch. In short, that accommodation didn't work. Falcon Jet tried it and the performance didn't improve. And so from April to August of 2013, when that performance didn't improve, Falcon Jet came back to Mr. Moses and said, okay, let's take the next step. Let's do an IME. But the accommodation was not necessarily for the, I mean, ultimately for performance, but it was also to eliminate the problem, right? With the one supervisor? The alleged harassment. Right. Well, I would contend, Your Honor, that the law, the ADA requires accommodation for a disability. And Mr. Moses alleges that the harassment exacerbated or made his condition worse. So they transfer him to someone where I think he's saying my blood pressure was lower. I was, I was better off in with this other supervisor. And according to our records and his performance evaluations with this new supervisor who had previously reviewed him, this new supervisor said his performance had not improved. And there were still problems with his concentration and focus at work. So that led Falcon Jet to the next step of, okay, what, how can we accommodate you in the workplace? And they scheduled the IME in August of 2013. And Dr. Carley came back with his report and he said, he's not qualified to do his current job. There's no possible accommodation in his current job. And there are severe restrictions if he's going to be employed, including not working in a safety sensitive position and not lifting over 30 pounds. At that point, Falcon Jet did the second accommodation, put him on medical leave, which lasted eight months until he was terminated in June. And what's interesting is I believe Judge Erickson made the point that there is no contrary medical evidence in the record to contest Dr. Carley's opinion that he was not This case may have been different. Had there been that, had Mr. Moses complains, well, the IME was unfair. I didn't, Dr. Carley didn't consider my allegations of harassment. Well, that was never raised at any point before his termination. Falcon Jet didn't know that. This has been conjured during a lawsuit. But let's say that happened. He could have gone and gotten a second opinion. He could have gone to another doctor. And if another doctor said, yes, you are qualified or you can be accommodated, Falcon Jet would have considered that. But that didn't happen. That's not this case. In fact, his own treating physician in February of 2014, in a statement to support his application for disability benefits, said that his condition had worsened. Now, he had been on medical leave away from the facility for five months. And during that time, his condition had worsened while at home. And his own treating physician said his condition was permanent and would not change. The third accommodation that Falcon Jet offered was another job. They continued to look for openings that would meet Dr. Carley's restrictions. They found a job that became open in January of 2014. It was in the security department. It was for lesser pay. They offered it to Mr. Moses and he rejected it. And the law is very clear that once an employee rejects a reasonable accommodation, the interactive process is over and the duty to accommodate is over. So in sum, with regard to the failure to accommodate claim, we submit that Falcon Jet tried three ways to accommodate him. And none of those ways worked. The retaliation claims, quickly, the temporal proximity just isn't there to prove causation between the protected activity and the termination. The EEOC charge was in November of 2013 and the termination occurred in June of 2014. And there's no evidence other than time that Mr. Moses points to to connect the two. In fact, the record, as Judge Moody indicates, says the opposite, that Falcon Jet tried to work with him through that time, tried to find him another job. And we can't escape the sole fact that the IME during this entire period declared him not qualified to do the job that he was in. There was no way to accommodate him in that job. And that was the reason that he was not reassigned to do that job with a different supervisor. What Mr. Moses would have my client do is to reinstate him, ignore the doctor's opinion, put him back in his old job with a new supervisor, having him flying around Arkansas doing the safety checks when there's a written medical record telling us not to do that. And we don't believe the law requires that. Finally, the termination letter, when it was delivered, clearly said that any time that your condition changes, you want to reapply, please do so. And of course, that has never happened. We have no indication that this condition has ever changed. I would submit in closing, Your Honors, that Judge Moody got it right. Summary judgment was properly granted. And we ask that you affirm that order. We'd be happy to entertain any questions you have. I see none. Thank you. Thank you, Mr. Vandiver. Mr. Curry, your rebuttal. I think that argument of counsel reflects that this case is extremely fact sensitive, which many of which were, I contend, incorrectly considered by the district court. I think that because of the fact issues, that a jury should determine the issues that are presented in this case. The only way we get there is if this court were to reverse the grant of summary judgment. There's several things. If you recall, counsel said that Dr. Carley said, Mr. Moses needs to be removed from a security position. The one example he gave of reasonable accommodations made to Mr. Moses was, we're going to employ you in the security shack, the guard shack. We're going to give you a gun. We're going to pay you half of what you were being paid. And Mr. Moses said, I can't do that. So one would think just from a credibility situation, if Mr. Moses really was a security risk through his disability, why give the man a gun? The story that they present just simply has holes in it. There's also on the severe and persuasive treatment that was being afforded to Mr. Moses. Again, what was being done to him was being done to him by his supervisors. They knew about it. They had been, HR had been told about it. The nurse had been told about it, and they allowed it to continue, especially when they put him back under the supervisor's watch that had been the guilty parties. And while it may not be persuasive or severe to us, it was to him. Because you've got to look at Mr. Moses was suffering from a disability that was extremely stress sensitive. And because of that, when it got around to the termination letter, I think the damage had been done. And according to Falcon Jet, according to Falcon Jet, our duty ends when we gave him the job position in the guard shack. And I contend it continued. And that was not a bona fide offer. That's I'll be quite. Thank you. Thank you, Mr. Curry. Court thanks both counsel for your presence and the argument you've provided to the court this morning. We'll take the case under advisement.